[No. 20150. Department Two. December 6, 1926.]

BRUCE JOHNSON, *by his Guardian ad Litem et al.,* *Respondents,* v. R. W. HUNTER *et al., Appellants.*[1]

[1] DAMAGES (80) — PERSONAL INJURIES IN GENERAL — EXCESSIVE VERDICT. A verdict for $5,185 for personal injuries is not excessive where $185 was for hospital and doctors fees, and plaintiff sustained a rupture of the muscles of the thigh, a severe blow on the head, injury to the knee, wrenched hand, cuts on the ankle and nervous shock, resulting in much pain and lameness and inability to engage in customary sports without another expensive operation.

[2] APPEAL (445) — REVIEW — HARMLESS ERROR — ARGUMENT OF COUNSEL. Error cannot be assigned upon a remark of counsel in argument calling attention to statements in the pleadings where it does not appear to be prejudicial.

Appeal from a judgment of the superior court for King county, Gilliam, J., May 20, 1926, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for personal injuries sustained in an automobile collision. Affirmed.

*Poe, Falknor, Falknor & Emory,* for appellants.

*Murphy & Kumm,* for respondents.

ASKREN, J.—This appeal is from a judgment entered upon a verdict of a jury, awarding damages in the sum of $5,185 for personal injuries sustained in an automobile collision.

In October, 1925, the automobile of appellants and respondents collided, one being completely, and the other at least partially, overturned. Suit was brought by respondent, alleging negligence of appellants. Answer was filed denying any negligence, and alleging an affirmative defense of contributory negligence.

[1]Reported in 251 Pac. 123.

At the commencement of the trial, all questions of liability for the accident were waived by appellants, limiting the question to be submitted to the jury to whether, as a result of the collision, there was an injury to respondents, and, if so, the amount of the recovery.

[1] It is first claimed that excessive damages were allowed by the jury. We have noted that the amount allowed was $5,185. The evidence showed that one hundred eighty-five dollars of this amount was for hospital, doctor and nurses' fees, and appellant admitted in open court that these charges were reasonable.

The injuries to respondent consisted of a rupture of the muscles of the right thigh, severe blow on the head, an injury to the knee, wrenched back, shock to his nervous system, and two cuts on the ankle. Of these, the rupture of the thigh muscles was concededly the most serious, the cuts on the ankle causing no discomfort or pain, and the nervous shock only depriving respondent of sleep for three or four nights. The blow on the head produced headaches, which still continued at the time of the trial; the knee has a burning sensation when touched, and the wrenched back causes it to tire sooner than is customary. Respondent had lost sixteen pounds in weight between the time of injury and trial. The rupture of the thigh muscle, however, caused it to be severed at the lower end, so that in attempting to use the leg this muscle, being one of four, extensor in their nature, knots into a semicircular formation about the size of half a tennis ball. It affects his walking, in that he cannot walk nearly so long or as far as before, and is especially troublesome when going up or down grade. The leg tires easily, and he is prevented from engaging in many of the physical sports which he had previously taken part in as a member of football, baseball, and basket ball teams.

In endeavoring to remedy this torn condition of the muscle, respondent's doctor made a six-inch incision in the leg, and endeavored to sew the muscle so as to attach the loosened ends thereof. Infection set in, and the operation was not successful. The physician, however, testified that another operation should be successful, although being more difficult because of the lapse of time. The new operation would be of the same nature as the first, and would require the leg to be elevated for at least two weeks, and then gradually lowered to a completely extended position. This would necessitate at least three weeks in the hospital, and from four to six weeks thereafter of special care to prevent undue strain.

It is apparent that there is a serious disability to the leg which can only be removed by an operation. The facts we have detailed, if believed by the jury, certainly called for substantial damages. The amount thereof is primarily a question for them, and will not lightly be set aside by this court. It is difficult for us to say that the amount awarded in this case is excessive. Admitting that another operation will restore the full use of the leg, yet respondent has suffered much since the accident from wrenched back, continued headaches, has gone through one painful operation from which he has a large scar on his hip, and must go through another one with all its attendant pain. The expense of the next operation will also be much greater than the first one. Under these circumstances, the trial court not having seen fit to reduce the amount of the verdict, we do not see our way clear to do so. *Bramer v. Percival*, 133 Wash. 126, 233 Pac. 311; *Sherrill v. Olympia Ice Cream Co.*, 135 Wash. 99, 237 Pac. 14.

It is next contended that the evidence was not convincing that the accident caused the injury. Upon

that question, it will suffice to say there was abundant
evidence to justify the jury in finding that the injury
was sustained at the time of the accident.  Appellant
sought to impeach the testimony in this regard by
showing alleged statements of respondent that his leg
had been previously injured in playing football.  Out-
side of admitting that the same leg had been hurt at a
different place, resulting in a wholly different sort of
an injury, the respondent and his witnesses denied any
such statements or any such injury.

Appellant also offered medical testimony to show
that, if the injury had been received as claimed, the
physical condition would have been different than testi-
fied to by respondent.  The medical experts did not
agree upon many of the facts, and the jury were at
liberty to, and did, decide the question, and have fore-
closed the inquiry to us.

[2]  Complaint is also made of remarks of respon-
dent's counsel, who, in his argument to the jury, in
what was apparently an answer to the argument of
opposing counsel over the fairness of appellants, said:

"If they want to be fair, take the complaint and
their answer and read their denial.  Read the charges
of negligence that are made in the complaint and their
denials.  Why didn't they stand on that denial, because
they could not."

Upon objection of appellant at the time, counsel for
respondent urged that it was proper upon the question
of the weight to be given the testimony.  It is now
claimed that the result of this argument would be to
direct the attention of the jury to the pleadings, and
that they would there see that respondents had alleged
in their complaint, as one of the acts of negligence of
the appellants, that one of them was intoxicated.

But the record shows throughout meticulous care

7—141 WASH.

upon the part of counsel for respondents to keep prejudicial facts from the jury, and we do not think this remark, in the heated argument of the trial, was either made with intent to prejudice appellant, or that it did actually do so.

Some question is also raised as to judgment being entered against each of the defendants separately as well as the community. We have heretofore referred to the fact that the question of liability was waived, and no proof offered thereon. The judgment was strictly in accordance with the allegations of the complaint and prayer thereof, and we find no error therein.

The judgment is affirmed.

TOLMAN, C. J., FULLERTON, PARKER, and MACKINTOSH, JJ., concur.